IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

ADAM R. TAYLOR                                                    PLAINTIFF


         v.                          CASE NO.        13-2071


CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                               DEFENDANT

### MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).


## I.  Procedural Background:

The plaintiff filed an applications for DIB on July 8, 2010, alleging an onset date of October 1, 2009, due to plaintiff's degenerative disc disease and anxiety (T. 149). Plaintiff's applications were denied initially and on reconsideration. Plaintiff then requested an administrative hearing, which was held on October 18, 2011. Plaintiff was present and represented by counsel.

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 35 years of age and possessed a High School Education (T. 150).  The Plaintiff  had past relevant work ("PRW") experience as a truck driver and factory worker.  (T. 150).

On March 9, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's degenerative disc disease, impulse control behavior, bipolar disorder vs depression, not otherwise specified, anxiety disorder, and polysubstance abuse vs dependence in partial remission did not meet or equal any Appendix 1 listing.  T. 12.  The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform sedentary work with additional restrictions.  T. 14.  With the assistance of a vocational expert, the ALJ then determined Plaintiff could  perform the requirements of representative occupation such as production assembler, machine tender, and hand packager.  T. 18.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision.  *Id.*  "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision."  *Id.*  As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently.  *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001).  If the court finds it possible "to draw two inconsistent positions from the

evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III.  Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

### A.  Residual Functional Capacity

The ALJ determined that the Plaintiff had the RFC to perform sedentary work except that he could only occasionally climb ramps and stairs but never climb ropes, ladders or scaffolds and could only occasionally balance, stoop, kneel, crouch and craws but he could not perform work overhead and must avoid concentrated exposure to hazards.  Nonexertionally, he found he was able to perform work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and little judgment, and the supervision required is simple, direct and concrete. (T. 14). The Plaintiff contends the ALJ's Residual Functional Capacity (RFC) assessment was not supported by substantial evidence. (ECF No. 12, p. 4).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1).  It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record.  *Id*.  This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question."  *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

-4-

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing  Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1.  Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.' " *Wagner v. Astrue,* 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ).  As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).  The court should , " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (C.A.8 (Ark.),2012). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir.2004).

The Plaintiff's work record may be considered in his credibility analysis. *See Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004) (ALJ may consider that a claimants sporadic work record reflecting relatively low earnings and multiple years with no reported earnings that

showed a lack of motivation to return to work). Here the Plaintiff had no substantial gainful activity from 1994 until 2001 and no income at all in 1999 and 2000. (T. 132). He did have SGA in 2002, 2004, 2005, and 2006. (T. 132-133). His work record certainly indicates that there may be other factors effecting his ability to work rather than his alleged physical and/or mental impairments.

The ALJ noted the Plaintiff's failure to seek treatment from the date of his first complaint in March 2009 (T. 367) until his alleged onset date of October 2009 (T. 145). See *Benskin v. Bowen*, 830 F.2d 878, 884 (8th Cir. 1987) (upholding ALJ's consideration of claimant's failure to seek medical attention where claimant's measures to relieve pain were not indicative of severe, disabling pain).

The ALJ also noted the lack of medical evidence that supported the Plaintiff's alleged physical impairments to the degree claimed. The lack of an objective medical basis to support a claimant's subjective complaints can be considered in evaluating a claimant's credibility. *Polaski,* 739 F.2d at 1322; *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir.2002).

This court concludes that, because the ALJ gave several valid reasons for the ALJ's determination that Plaintiff was not entirely credible, and a review of the record supports, the ALJ's credibility determination is entitled to deference, *see Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir.2012). Accordingly, the evidence as a whole supports the ALJ's conclusion that Plaintiff's testimony was credible to the extent that it establishes that he has some pain, but not to the extent that it would support his claim that he cannot perform any type of work. *See Woolf*, 3 F.3d at 1214.

   **2. RFC Determination**

### a. Mental Impairment

The Plaintiff claimed severe anxiety as a basis for his disability in July 2010. (T. 149).

Dr. Patrician Walz saw the Plaintiff in September 2010 for a Mental Diagnostic Evaluation. (T. 269). Plaintiff told Dr. Walz that he had applied for disability benefits because of his back and joints (Tr. 269). Dr. Walz diagnosed the Plaintiff with Bipolar II disorder vs Depression NOS and Impulse Control Disorder with Polysubstance Abuse vs Dependence in partial remission. She assessed a GAF score of 45-55[2]. (T. 273). Dr. Walz described activities that showed Plaintiff did not have any mental impairments that affected his day-to-day activities (Tr. 273-274). Dr. Walz opined that Plaintiff's social skills were adequate; his speech was clear and intelligible; his intellectual functioning was in the average range; his attention and concentration were average; he persisted well; and his speed of processing information was average (Tr. 274).

Dr. Diane Kogut, Ph.D. performed a Psychiatric Review Technique on October 4, 2010 and diagnosed the Plaintiff with Bipolar nos, and depression nos (T. 291), and anxiety nos (T. 293). Dr. Kogut felt that the Plaintiff's Functional Limitations were Mild to Moderate (T. 298) and issued a Mental RFC Assessment finding that the Plaintiff was Moderately Limited or Not Significantly Limited in his functioning. (T. 284-285). Doctor Kogut's Mental RFC was reviewed and affirmed by Dr. Abesie Kelly, Ph.D. on February 7, 2011. (T. 337).

Outside of a one hour visit at the Choctaw Hospital Behavior Clinic in June 2004 for

---

[2]A GAF of 41 to 50 indicates "Serious symptoms ... OR any serious impairment in social, occupational, or school functioning (e .g., few friends, unable to keep a job)." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed.2000). A GAF score of 51 to 60 indicates "moderate symptoms ... OR moderate difficulty in social, occupational, or school functioning." DSM-IV-TR at 34..While the Eighth Circuit Court of Appeals has recognized that GAF scores are relevant evidence in evaluating a disability claim (*See Pates-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009); *Brueggemann v. Barnhart*, 348 F.3d 689 (8th Cir. 2003)) a GAF (global assessment of functioning) score is not determinative for Social Security purposes.

anxiety and anger (T. 407) and a phone call to the Clinic in 2006 (T. 409) the Plaintiff has sought

no treatment for his alleged anxiety. In April 2010 the Clinic records reflect that the Plaintiff had

"never returned to behavioral health due to lack of transportation." (T. 238).  It is true that,

"[w]hile not dispositive, a failure to seek treatment may indicate the relative seriousness of a

medical problem ." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir.1995). *Id.*; *See Kirby v. Astrue*,

500 F.3d 705, 709 (8th Cir. 2007) (holding that lack of formal treatment by a psychiatrist,

psychologist, or other mental health professional is a significant consideration when evaluating

Plaintiff's allegations of disability due to a mental impairment).  *Banks v. Massanari*, 258 F.3d

820, 825-26 (8th Cir.2001) (ALJ properly discounted claimant's complaints of disabling

depression as inconsistent with daily activities and failure to seek additional psychiatric

treatment)

The Plaintiff claimed that he was on prozac and trazodone when he made his application

for disability. (T. 152). When he spoke with Dr. Walz in September 2010 he claimed he was on

Prozac 20mg bid, Seroquel 25 mg prn and 100 mg at bedtime, and Trazodone four 50 mg at

bedtime. (T. 270) but that he had to stop taking his medication because he was driving cross

county.  He also stated that "without meds it kind of builds up and the next thing, I'm all the

way." (Id.). When the Plaintiff testified at his hearing before the ALJ in October 2011 he stated

that he was not taking any medication for his anxiety.(T. 52). Impairments that can be controlled

effectively with medication are not disabling for the purpose of determining eligibility for SSI

benefits. *See, e.g., Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir.2004); *Lovelace v. Bowen*, 813

F.2d 55, 59 (5th Cir.1987); see also *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir.1983) (affirming

a denial of benefits and noting that the claimant's impairments were responsive to medication).

-8-

*Warre v. Commissioner of Social Sec. Admin.* 439 F.3d 1001, 1006 (C.A.9 (Or.),2006).

The court concludes that the ALJ properly considered the Plaintiff's mental impairments

in assessing his RFC.

### b.  Physical Impairments

The Plaintiff also claimed in July 2010 that he was unable to work because of

degenerative disc disease. (T. 149).  The Plaintiff first medical record indicating any physical

impairment is March 21, 2009 when he reported to Mercy ER claiming he hurt his left shoulder

while wrestling. (T. 368). X-ray of the left shoulder was normal (T. 373).  St. Edward's medical

staff placed Plaintiff's left arm in a sling, recommended ice pack applications, and gave him a

pain medication.  He was told that he could return to work on March 24, 2009.  (Tr. 368). The

medical records do not reflect any medical treatment during 2009 even though the Plaintiff

claims he became unable to work on October 1, 2009. (T. 128).

The Plaintiff next seeks medical treatment at the Choctaw Nation Hospital (CNH) on

April 7, 2010 complaining of back pain and to check out moles on his back. (T.  238). The clinic

notes that his musculoskeletal exam was "normal" and that he could "ambulate without

problems." (Id.).  He was diagnosed with fatigue and HTN (hypertension) and prescribed

Lisinopril[3] 20 mg. (T. 244).  No mention was made of any back, shoulder, or other

musculoskeletal problems.

On April 21, 2010, Plaintiff had x-ray examinations of his left shoulder, which showed

---

[3]Lisinopril is in a group of drugs called ACE inhibitors. ACE stands for angiotensin converting enzyme. Lisinopril is used to treat high blood pressure (hypertension), congestive heart failure, and to improve survival after a heart attack.  See www.drugs.com

post traumatic degenerative joint disease in the acromioclavicular joint, with no acute pathology (Tr. 227). The same day, Plaintiff had a computerized tomography (CT) scan examination of his lumbar spine, which revealed at disc bulge at L4-5, with a mild left neuroforaminal stenosis at L4-5 and L5-S1 (Tr. 229). Plaintiff returned to Choctaw on June 30, 2013, asking for his imaging (x-ray) reports because he was going to "try to get disability from Social Security" (Tr. 234).

On January 19, 2011, Plaintiff went to Choctaw complaining of left shoulder pain radiating down to his elbow (Tr. 321). The same day, Plaintiff had an magnetic resonance imaging (MRI) examination, which showed no evidence of a rotator cuff tear or tendinitis; and acromioclavicular joint arthropathy with small subclavicular spurring; and post-traumatic healed change involving the distal clavicle (Tr. 315). The MRI report states that "given prior radiographic studies[, it] is likely related to a remote acromioclavicular joint injury" (Tr. 315). Plaintiff returned on follow up on February 7, 2011, and he was scheduled for an MRI of his cervical spine (Tr. 342). Plaintiff had the MRI examination on March 1, 2011, which showed "no fracture, subluxation, or dislocation," and showed only mild multilevel degenerative disc disease, disc osteophyte complexes, central canal stenosis, and neuroforaminal narrowing (Tr. 351-354).

On October 17, 2011, Plaintiff had an MRI examination of his lumbar spine, which showed "mild posterior disc bulges at L3 through S1 **without canal stenosis or neuroforaminal narrowing**" (Tr. 394). On October 27, 2011, Plaintiff had x-ray examinations of his hips, which revealed unremarkable results (Tr. 396).

On September 28, 2010, Stephanie Frisbie, M.D., performed a general physical examination at the agency's request (Tr. 276-279). Plaintiff told Dr. Frisbie that he had

-10-

degenerative joint disease and had back, shoulder, and knee pain (Tr. 276). Upon examination, Dr. Frisbie noted that Plaintiff had a negative straight-leg raising test of both the right and left legs (Tr. 277).4 Plaintiff had no joint deformities, instability, or contractures (Tr. 277). Plaintiff had normal (5/5) grip strength bilaterally and normal (5/5) muscle strength of both arms and legs; had no muscle atrophy; had no sensory abnormalities; and had a steady gait (Tr. 277). Plaintiff had a normal limb function and was able to hold a pen, touch fingertips to palm, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position (Tr. 277). Plaintiff had a normal range of motion of his shoulders, elbows, wrists, hands, hips, knees, ankles, cervical spine, and lumbar spine, other than having a flat lumbar curvature (Tr. 278).

On October 21, 2010, Bill F. Payne, an agency medical consultant, opined that Plaintiff had the ability to lift and carry twenty pounds occasionally and ten pounds frequently; to stand, walk, and sit about six hours in an eight-hour workday; and to push and pull without limitation, other than as shown for lifting and carrying (Tr. 306). The medical consultant also opined that Plaintiff had no postural, visual, communicative, or environmental limitations (Tr. 307-309). Notably, Dr. Payne assessed Plaintiff with the ability to perform light work. Dr. Payne's opinion was reviewed and affirmed by Dr. Jonathan Norcross on February 9, 2011, (T. 340).

Finally a nerve conduction study was performed by Dr. David Oberlander, a neurologist, on December 13, 2011 which found "support for mild, bilateral median nerve compression at the wrist-carpel tunnel syndrome (not surprising in light of the Plaintiff past history as a boxer). There is no evidence for myopathy, motor neuron disease, generalized peripheral neuropathy, or neuromuscular junction disorder." (T. 418).

-11-

The Eighth Circuit Court of Appeals has upheld the Commissioner's RFC assessment in cases where the ALJ did not rely on a treating physician's functional assessment of the claimant's abilities and limitations. *See Page v. Astrue*, 484 F.3d at 1043 (the medical evidence, state agency physician opinions, and claimant's own testimony were sufficient to determine RFC); *Stormo v. Barnhart*, 377 F.3d 801, 807-08 (8th Cir. 2004) (medical evidence, state agency physicians' assessments, and claimant's reported activities of daily living supported RFC finding); *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004) (ALJ's RFC assessment properly relied upon assessments of consultative physicians and a medical expert, which did not conflict with the treating physician's records). *See also Raney v. Barnhart*, 396 F.3d 1007, 1010 (8th Cir.2005) (concluding that one consulting physician's RFC assessment supported the ALJ's RFC finding when none of the claimant's treating physicians opined she was unable to work). *Moore v. Astrue* 572 F.3d 520, 523 -524 (C.A.8 (Ark.),2009).

The court believes that the ALJ properly weighed all of the medical evidence in the case and that the ALJ properly discounted the opinions of a consulting physician and several treating physicians as to Plaintiff's residual functional capacity (RFC), *see Renstrom v. Astrue*, 680 F.3d 1057 at 1064 (treating physician's opinion does not automatically control); *Charles v. Barnhart*, 375 F.3d 777, 783 (8th Cir.2004) (generally when consulting physician examines claimant only once, his opinion is not considered substantial evidence); that Plaintiff failed to meet his burden of demonstrating his RFC, *see Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir.2012); and that the ALJ's hypothetical to the vocational expert (VE) accounted for all of Plaintiff's proven impairments, *see Buckner v. Astrue*, 646 F.3d 549, 560–61 (8th Cir.2011) (VE's testimony constitutes substantial evidence when it is based on hypothetical that accounts for all of

claimant's proven impairments; hypothetical must include impairments that ALJ finds substantially supported by record as a whole).

### IV.  Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed.  The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated  this March 7, 2014.


*/s/ J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE